UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

COURCHEVEL 1850 LLC,                                  :
                                                     :
                         Plaintiff,                  :
                                                     :       REPORT &
        -against-                                    :       RECOMMENDATION
                                                     :       17-CV-00785 (JBW) (SMG)
MOHAMMED ALAM, KOZNITZ I LLC, UNITED                 :
STATES OF AMERICA (INTERNAL REVENUE                  :
SERVICE), N.Y. STATE DEPARTMENT OF                   :
TAXATION AND FINANCE, CITIBANK, N.A.,                :
CITIBANK (SOUTH DAKOTA), N.A., NEW YORK              x
CITY ENVIRONMENTAL CONTROL BOARD, NEW                :
YORK CITY TRANSIT ADJUDICATION BUREAU,               :
and NEW YORK CITY PARKING VIOLATIONS                 :
BUREAU,                                              :
                                                     :
                         Defendants.                 :
                                                     :
                                                     :
-------------------------------------------------------------------x

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Courchevel 1850 LLC brings this action pursuant to New York Real Property

Actions and Proceedings Law ("RPAPL") § 1301 *et seq.* to foreclose a mortgage encumbering

the property commonly known as 3228 97th Street, East Elmhurst, New York 11369 (the

"Property").  Plaintiff moves for summary judgment against defendant Koznitz I LLC

("Koznitz"), and Koznitz cross-moves to dismiss the action for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary

judgment.  Plaintiff additionally moves for the appointment of a receiver to collect rents due

from the Property during the pendency of this action pursuant to Rules 64 and 66 of the Federal

Rules of Civil Procedure.  Finally, Koznitz moves again to dismiss the action pursuant to Rule 12(b)(1) and separately moves for sanctions pursuant to Federal Rule of Civil Procedure 11.

Senior United States District Judge Jack B. Weinstein has referred the pending motions to me for report and recommendation.  For the reasons stated below, I respectfully recommend that plaintiff's motion for summary judgment be granted in its entirety; Koznitz's cross-motion to dismiss and for summary judgment, second motion to dismiss, and motion for sanctions be denied; and plaintiff's motion to appoint a receiver be denied.  I also respectfully recommend that the New York State Department of Taxation and Finance ("Department of Taxation") and the United States of America (Internal Revenue Service) ("IRS") be dismissed from this action, and that Koznitz be permitted to take additional discovery on the issue of subject matter jurisdiction, provided it is not duplicative of discovery it has already conducted.

<h3 style="text-align:center">FACTS[1]</h3>

On August 18, 2008, defendant Mohammed Alam ("Alam") executed a note to AmTrust Bank in the principal amount of $177,000 (the "Note").  Pl.'s Rule 56.1 Statement ¶ 4, Dkt. 40; Note & Allonges, Dkt. 1-2.  On that same date, to secure repayment of the Note, Alam executed a mortgage encumbering the Property to Mortgage Electronic Registration Systems, Inc. as nominee for AmTrust Bank (the "Mortgage").  Pl.'s Rule 56.1 Statement ¶ 3; Mortgage, Dkt. 1-3.  Plaintiff asserts, but Koznitz disputes, that plaintiff was the owner and holder of the Note and Mortgage when the Complaint in this action was filed.  Pl.'s Rule 56.1 Statement ¶ 8; Response to Pl.'s Rule 56.1 Statement ¶ 8, Dkt. 49.  Koznitz, a limited liability company, became the record owner of the Property, subject to the Mortgage, pursuant to a deed from Alam recorded on July 26, 2013.  Compl. ¶ 10, Dkt. 1.  Plaintiff also claims, and Koznitz disputes, that plaintiff's

---

[1]  Unless otherwise indicated, the facts set forth here are undisputed.

predecessor-in-interest mailed a 30-day default notice to Alam on December 8, 2016.  Pl.'s Rule

56.1 Statement ¶ 5; Response to Pl.'s Rule 56.1 Statement ¶ 5; Default Letter, Dkt. 1-5.  Plaintiff

alleges that Alam defaulted on the Note and has failed to cure his default.  Compl. ¶¶ 38, 42.

On June 2, 2017, the Clerk of the Court entered a default against all defendants in this

action with the exception of the IRS, which appeared through counsel on March 31, 2017.

Clerk's Entry of Default dated June 2, 2017; *see* IRS Notice of Appearance & Waiver, Dkt. 19.

Plaintiff thereafter moved for default judgment of foreclosure and sale.  Dkt. 26.  On December

31, 2017, Koznitz moved to vacate the Clerk's entry of default and dismiss the action against

Koznitz on the ground that it was not served with the Summons and Complaint.  Dkt. 27.

Thereafter, plaintiff and Koznitz entered into a stipulation vacating the entry of default against

Koznitz and withdrawing Koznitz's motion to dismiss.  Stipulation & Proposed Order, Dkt. 29.

The stipulation was approved, and plaintiff's motion for default judgment and Koznitz's motion

to vacate the Clerk's entry of default were terminated.  Order dated Jan. 17, 2018; Order dated

Jan. 22, 2018.

On February 26, 2018, I held an initial conference and set a case management schedule

that provided for discovery to be completed by April 9, 2018.  Dkt. 32.  The discovery schedule

was subsequently extended.  Dkt. 34.  Thereafter, plaintiff moved for summary judgment, Dkt.

38, Koznitz cross-moved to dismiss and for summary judgment, Dkt. 45, and plaintiff moved to

appoint a receiver, Dkt. 58.  Upon reviewing the parties' submissions in connection with these

motions, I observed similarities between the facts of this case and those presented in *Gustavia*

*Home, LLC v. 10586 Flatlands 1 Realty Corp.*, 17-CV-4188 (MKB) (SMG)—a case, like this

one, brought to foreclose on a mortgage and in which I issued a report recommending dismissal

pursuant to 28 U.S.C. § 1359.  *See* Report & Recommendation in 17-CV-4188 dated Feb. 4,

3

2019, Dkt. 57.[2]  Section 1359 provides that federal courts may not exercise diversity jurisdiction when a party is improperly or collusively joined to create diversity.

As in *Gustavia*, this action is based on diversity jurisdiction.  Plaintiff contends that it is a Florida citizen and that defendants are citizens of all different states, including New York. However, plaintiff came to own the Note and Mortgage only just before this action was commenced, and by transfer from Blue Lagoon LLC ("Blue Lagoon"), which may have had a New York member.  These circumstances prompted concern about whether plaintiff and others conspired to manufacture diversity and thus enabled plaintiff to bring this action in federal court.

At a hearing on the pending motions held on February 4, 2019,[3] I expressed this concern and thereafter entered an Order directing plaintiff to show cause why this Court should not conclude that diversity jurisdiction was manufactured and that dismissal was warranted pursuant to 28 U.S.C. § 1359.  Order to Show Cause dated Feb. 4, 2019, Dkt. 69.  After several extensions of time, plaintiff filed a response to the Order to Show Cause, attaching: (1) the affidavit of Yonel Devico ("Devico"), Blue Lagoon's sole member; (2) Blue Lagoon's operating agreement; and (3) the purchase agreement between Blue Lagoon and plaintiff, which purportedly shows the consideration paid by plaintiff.  Mem. of Law in Response ("OTSC Mem."), Dkt. 74; Devico Aff., Dkt. 75; Operating Agreement, Dkt. 75-1; Purchase Agreement, Dkt. 75-2.  In response, Koznitz filed a letter stating that it intended to submit opposing papers and to move again to dismiss the action and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Letter dated Mar. 26, 2019, Dkt. 77.

---

[2]  The Report and Recommendation in *Gustavia* was adopted by Memorandum and Order dated March 31, 2019. Dkt. 62 in 17-CV-4188.  Although a notice of appeal was filed, the appeal was subsequently withdrawn.  Dkts. 64, 65 in 17-CV-4188.

[3]  The February 4, 2019 hearing was conducted on the record but neither of the parties has ordered a transcript.  Min. Entry dated Feb. 4, 2019, Dkt. 70.

By Order, I instructed plaintiff to correct deficiencies in several of its filings.  Order dated April 15, 2019, Dkt. 78.  Specifically, I explained that the affidavit of Jared Dotoli ("Dotoli"), submitted in support of plaintiff's motion for summary judgment, Dotoli Aff., Dkt. 42, and the affidavit of Devico, submitted in support of plaintiff's response to this Court's Order to Show Cause, were not true affidavits, in that they lacked a jurat and did not qualify as unsworn declarations pursuant to 28 U.S.C. § 1746 because they were not expressly made under penalty of perjury.  Thereafter, plaintiff submitted the corrected documents, Revised Devico Aff., Dkt. 79; Revised Dotoli Aff., Dkt. 80, and in response, Koznitz filed a second motion to dismiss upon the ground that diversity jurisdiction was manufactured, Dkt. 83, and a motion for sanctions against plaintiff, Dkt. 84.

During a telephone conference on July 26, 2019, the parties indicated that they would "undertake a good faith effort to resolve the case and [would] submit a written report on the status of their efforts to reach a settlement."  Min. Entry dated July 26, 2019, Dkt. 93.  However, the settlement discussions proved fruitless, causing plaintiff to request that this Court rule on the pending motions.  Letter dated August 19, 2019, Dkt. 94.

## DISCUSSION

### I. SUBJECT MATTER JURISDICTION

District courts have diversity jurisdiction where, assuming the requisite amount in controversy, the suit is between "citizens of different States."  28 U.S.C. § 1332(a)(1).  Complete diversity of citizenship is required; "[t]hat is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original); *see also St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005).  Moreover, "diversity must exist at the time the action is commenced."  *Universal Licensing Corp. v. Paola del Lungo*

*S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

The burden of establishing subject matter jurisdiction rests with the party invoking it. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Accordingly, I begin by considering whether diversity has been established by a preponderance of the evidence, or whether the facts indicate that diversity was manufactured and dismissal is therefore warranted pursuant to 28 U.S.C. § 1359.

### 1. Manufactured Diversity Under 28 U.S.C. § 1359

#### a. Legal Standard

Section 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The Supreme Court in *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828, 830 (1969) held that an assignment made, admittedly "in substantial part . . . to make diversity jurisdiction available," fell "within [the] very core" of Section 1359. The Second Circuit has on several occasions construed Section 1359 in a similarly broad way, holding "that appointment of an administrator for the purpose of obtaining federal jurisdiction violates [S]ection 1359," *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1036 (2d Cir. 1969), that where "a non-diverse parent corporation has assigned a claim to its wholly owned diverse subsidiary engaged in no business other than the prosecution of that claim, the assignment must be treated as presumptively improper and as having been undertaken for the purpose of attempting to manufacture diversity jurisdiction," *Prudential Oil Corp. v. Phillips Petroleum*

*Co.*, 546 F.2d 469, 476 (2d Cir. 1976), and that there are situations where, even though the assignor and assignee "do not enjoy a parent-subsidiary relationship, . . . their close ties trigger the presumption of collusion," *Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995).

In the context of an assignment challenged pursuant to Section 1359, "[o]nce the question of jurisdiction is raised, the party asserting diversity jurisdiction has the burden of proving the assignment was not collusive." *Airlines Reporting Corp. v. S and N Travel, Inc.*, 857 F. Supp. 1043, 1048 (E.D.N.Y. 1994), *aff'd*, 58 F.3d 857 (2d Cir. 1995). When evaluating a claim of manufactured diversity jurisdiction pursuant to Section 1359,

> [c]ourts consider, *inter alia*: the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment."

*Airlines Reporting Corp.*, 58 F.3d at 863 (internal citations omitted).

### b. Analysis

As noted above, the Note and Mortgage were assigned to plaintiff by Blue Lagoon shortly before this case was brought. In response to the Court's Order to Show Cause entered on February 4, 2019, plaintiff asserts that Devico, Blue Lagoon's sole member, is lawfully admitted for nonpermanent residence in the United States, resides in Florida, and is a citizen of the Kingdom of Morocco. *See* OTSC Mem. at 3–4. Plaintiff argues that, because Devico is an alien, Blue Lagoon is also an alien for diversity purposes; therefore, plaintiff concludes, "there was no collusion" between Blue Lagoon and plaintiff to "manufacture diversity[,] as either party would have been able to separately maintain this action in [f]ederal [c]ourt based on diversity jurisdiction." *Id.* at 4.

A limited liability company is completely diverse from opposing parties only if all of its members are citizens of different states than all opposing parties. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). That is, the "citizenship of a limited liability company is not the state in which it is organized or has its principal place of business, but rather, each of the states in which it has members." *Lewis v. Allied Bronze LLC*, 2007 WL 1299251, at *1 (E.D.N.Y. May 2, 2007). For diversity purposes, an individual's citizenship "depends on his [or her] domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (internal quotation marks and citation omitted). "Domicile is the place where a person has his [or her] true fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also White v. Abney*, 2019 WL 1298452, at *3 (E.D.N.Y. Mar. 21, 2019).

Of particular relevance to the facts presented here, 28 U.S.C. § 1332(a)(2) provides for original jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state," with the exception that "citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States" are treated as citizens of the state in which they are domiciled. "Courts have found that the language of [Section] 1332(a)(2) refers to an alien litigant's official immigration status." *Mor v. Royal Caribbean Cruises Ltd.*, 2012 WL 2333730, at *1 (S.D.N.Y. June 19, 2012) (internal quotation marks and citations omitted); *see also Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 637–38 (E.D.N.Y. 2000); *Kato v. Cty. of Westchester*, 927 F. Supp. 714, 715–16 (S.D.N.Y. 1996). "Therefore, aliens who have been accorded lawful permanent resident status under the immigration laws [of the United States] are considered aliens 'admitted for permanent residence,' while aliens admitted to the

8

United States on temporary nonimmigrant visas are not." *Kato*, 927 F. Supp. at 716 (internal citation omitted).

Devico is Blue Lagoon's sole member.  Plaintiff has submitted Devico's passport, which shows that he is a citizen of Morocco, s*ee* Passport, Dkt. 79-3, and a sworn affidavit by Devico, in which he avers that he is admitted to the United States as a nonpermanent resident and "was never granted [the] status of permanent resident," Revised Devico Aff. ¶ 7.

Koznitz argues that there are "serious questions about where . . . Devico resides and where he is domiciled," Declaration of Solomon Rosengarten ("Rosengarten Decl.") ¶ 45, Dkt. 83, and suggests that the Court should require plaintiff, in addition to submitting Devico's passport, to submit Devico's nonpermanent visas as proof that he does not have permanent residency in the United States, *see id.* ¶ 39.  Koznitz had the opportunity to conduct discovery with respect to subject matter jurisdiction, *see* Min. Entry dated Feb. 4, 2019, but has not identified any documents or other evidence calling into question Devico's claim to be a citizen of Morocco rather than a lawful permanent resident of the United States.  Under these circumstances, "[i]n the absence of evidence to the contrary, and with no reason to doubt the truth of [Devico's] averment," Devico's passport and affidavit are sufficient to establish diversity jurisdiction by a preponderance of the evidence. *Tevdorachvili*, 103 F. Supp. 2d at 638.

Koznitz does point to facts suggesting that, if Blue Lagoon were a New York domiciliary, the question of whether diversity was manufactured in this case would be close.  On the one hand, plaintiff has articulated what may be a genuine business reason for the assignment of the Note, explaining that Blue Lagoon does not service secured notes, like the one in this case, and regularly resells such notes to other entities, like plaintiff.  *See* OTSC Mem. at 4–5; Revised Devico Aff. ¶ 17.  Plaintiff has also submitted the purchase agreement pursuant to which plaintiff

acquired the Note and Mortgage, which recites that the transfer was for "good and valuable consideration," Purchase Agreement at 1, and has explained that Devico "does not control the litigation in the instant action nor does Blue Lagoon . . . share in any of the recovery of the instant action."  OTSC Mem. at 5; *see also* Revised Devico Aff. ¶¶ 18–19.  On the other hand, Koznitz has submitted evidence of the close connection between Blue Lagoon and plaintiff.  Specifically, Koznitz has pointed out that, in another federal case, Devico "executed an agreement to assign a bid at a foreclosure sale as an 'authorized signatory' of [plaintiff]" and that Blue Lagoon's principal place of business is the same as plaintiff's address.  Rosengarten Decl. ¶¶ 8, 48.  Additionally, Koznitz has submitted evidence that the attorneys for plaintiff in this action represented Blue Lagoon in another action in New York Supreme Court, Queens County, *see* Rosengarten Decl., Ex. C, Dkt. 83-2, and that the attorneys for plaintiff represented both Dotoli—plaintiff's sole member—and Devico in another federal action, *see id.*, Ex. D.  However, because Devico's passport and affidavit are sufficient to establish his status as a citizen of a foreign state without legal permanent residence here, I conclude that plaintiff has established by a preponderance of the evidence that Blue Lagoon is an alien and that the assignment of the Note from Blue Lagoon to plaintiff did not create diversity where previously there was none.[4]  I therefore respectfully recommend that Koznitz's second motion to dismiss and motion for sanctions be denied.

Koznitz requests that the Court "permit discovery on the issue of subject matter jurisdiction" if its pending motion to dismiss is denied.  Rosengarten Decl. ¶ 60.  As noted above, though, Koznitz was previously granted leave to take discovery on this issue and others.

---

[4]  In *Gustavia*, I recommended that the action be dismissed without prejudice based on the plaintiff's failure to raise a genuine issue of material fact with respect to whether the assignment at issue was made for any reason other than to manufacture diversity jurisdiction in violation of 28 U.S.C. § 1359.  In that case, no claim of foreign citizenship was made and no foreign passport was submitted.

*See* Min. Entry dated Feb. 26, 2018; Min. Entry dated Feb. 4, 2019.  The absence of subject matter jurisdiction, however, may be raised at any time.  *See Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*.").  Accordingly, Koznitz may take additional discovery with respect to whether diversity jurisdiction is present in this case, provided it is not duplicative of discovery it has already conducted.

### 2. Complete Diversity

Having concluded that Blue Lagoon did not assign the Note to plaintiff for the purpose of creating diversity, I next consider Koznitz's argument that defendants Department of Taxation and the IRS are governmental entities that cannot be citizens of any state for diversity purposes. *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss & for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. ("MTD Mem.") at 2–3, Dkt. 48.  In response, plaintiff indicates its willingness to dismiss these two defendants because "they are not necessary [or] indispensable parties to the instant action pursuant to RPAPL § 1311."  Mem. of Law in Opp. to Def.'s Cross-Mot. to Dismiss & for Summ. J. & in Further Supp. of Pl.'s Mot. for Summ. J. ("MTD Opp.") at 4, Dkt. 52.

It is well-settled that "a State is not a 'citizen' for the purposes of . . . diversity jurisdiction."  *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973).  Accordingly, the Department of Taxation may not be joined in a diversity case because "[i]t is simply an agency of the State of New York charged with carrying out one of the State's essential functions" and "thus has no citizenship separate from that of the State."  *E. Sav. Bank v. Walker*, 775 F. Supp. 2d 565, 572 (E.D.N.Y. 2011).  Similarly, the IRS cannot "be subject to suit in a diversity case" because "[i]t

is obviously not a citizen of any State" and "[t]he only possible basis for joining it . . . would be if there was federal question jurisdiction over the claim against it."  *Id.* at 573.

Rule 21 of the Federal Rules of Civil Procedure "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)."  *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (internal citations omitted).   Under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  The factors to consider include:

> "(1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit."

*CP Sols. PTE, Ltd.*, 553 F.3d at 159 (citing Fed. R. Civ. P. 19(b)).

RPAPL § 1311(3) provides that persons having a lien upon real property that is claimed to be subordinate to the plaintiff's lien must be made a party defendant to a foreclosure action. "This rule derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale."  *Bank of Am., N.A. v. 3301 Atl., LLC*, 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (internal quotation marks and citations omitted). However, "[n]ecessary parties are not always indispensable parties . . . whose absence mandates dismissal of the action."  *In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir. 1983).  Rather, "[t]he absence of a necessary party in a foreclosure action simply leaves such party's rights to the premises unaffected."  *Id.*; *see also Walker*, 775 F.Supp.2d at 574 (reasoning that "if plaintiff

wishes to have the property sold subject to the liens, [the court] see[s] no impediment to it doing so").

Here, the Complaint alleges that the Department of Taxation and the IRS have liens that are subject and subordinate to plaintiff's Mortgage.  *See* Compl. ¶¶ 12, 14.  The IRS has confirmed that its liens are subordinate to plaintiff's Mortgage.  *See* Letter dated June 2, 2017, Dkt. 23.  For these reasons, I recommend that both the Department of Taxation and the IRS be dismissed as party-defendants, but that any sale of the Property be subject to their liens.  *See* *Walker*, 775 F. Supp. 2d at 574.[5]

Koznitz further alleges that "plaintiff has not offered any evidence as to [defendant] Citibank's[6] citizenship," and thus "has failed to meet its burden that diversity exists."  MTD Mem. at 2–3.  A national bank is located for diversity purposes "in the State designated in its articles of association as its main office."  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *see also Excelsior Funds, Inc. v. JP Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312, 313 (S.D.N.Y. 2006) ("[A] national bank is a citizen only of the state in which its main office is located, and not the state in which its principal place of business is located, if that state differs from the location of its main office.").  Here, plaintiff has submitted a copy of Citibank's amended Articles of Association, which states that "[t]he Head Office shall be in the City of Sioux Falls, State of South Dakota."  Declaration of Alan Smikun in Opp. to Def.'s Cross-Mot.

---

[5]  On similar facts, the court in *Walker* cautioned the plaintiff that "allowing it to proceed in this manner does not in any way determine whether a decision to foreclose upon the mortgage but not the liens would permit the borrower to claim that [the] plaintiff foreclosed in a commercially unreasonable manner and thereby depressed the sales price of the property."  775 F. Supp. 2d at 574 n.10.

[6]  Defendants Citibank, N.A. and Citibank (South Dakota), N.A. have merged.  *See* Compl. at 5 n.1.

& Summ. J. & Attached Exhibits at 27, Dkt. 53.[7]  Citibank is thus a citizen of South Dakota and a diverse party.

For the reasons stated above, I respectfully recommend that Koznitz's motion to dismiss on grounds of lack of complete diversity be denied.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### 1. Standard of Review

A court may grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To defeat summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *accord Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  At the same time, though, "[i]n deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (internal quotation marks and citation omitted).

Where, as here, both parties have filed motions for summary judgment, each motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is being considered at the time.  *See Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010).  A court's decision to deny one party summary

---

[7]  The page number in the text refers to the pagination attributed by ECF and not to the internal page numbers on the document itself.

judgment does not require that the court grant summary judgment in favor of the other.  *See*

*Sullivan-Mestecky v. Verizon Commc'ns Inc*., 2018 WL 2422678, at *10 (E.D.N.Y. Mar. 5,

2018), *report & recommendation adopted* 2018 WL 2229140 (E.D.N.Y. May 16, 2018).

### 2.  Plaintiff's Prima Facie Case

 "[A] plaintiff establishes a prima facie entitlement to summary judgment in a foreclosure

action by producing the note, the mortgage, and proof of the defendant's default."  *CIT Bank,*

*N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 195 (S.D.N.Y. 2018).  With regard to proof of default,

general allegations are insufficient; instead "[t]here must be some proof in the form of an

affidavit of a person with knowledge, or a complaint verified by a person with knowledge."

*Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007) (internal

quotation marks and citation omitted).  A plaintiff who establishes a prima facie case has a

presumptive right to foreclose, and the burden shifts to the defendant to "raise a triable issue of

fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home, LLC v.*

*Bent*, 321 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2018).

Here, plaintiff has established its prima facie case by submitting copies of the Note and

Mortgage, executed by Alam, and an affidavit from Jared Dotoli, plaintiff's sole member with

personal knowledge of the facts and circumstances of the case, attesting to Alam's default on the

amount due.  *See* Revised Dotoli Aff. ¶¶ 4, 9, 10, and Exs. B and C; *see also Wells Fargo Bank,*

*N.A. v. Ullah*, 2015 WL 3735230, at *4 (S.D.N.Y. June 15, 2015) (holding that the plaintiff had

established a prima facie case of mortgage foreclosure under New York law by "submitting

copies of the Note and Mortgage" and "an affidavit from an Assistant Secretary of [the

plaintiff's] loan servicer who is familiar with the case attesting to [the defendant's] default").

Koznitz does not contest that Alam executed a Note payable to AmTrust Bank, that the amount

due under the Note was secured by a Mortgage on the Property, or that Alam stopped paying the amounts due under the Note.  *See generally* Koznitz's Response to Pl's Rule 56.1 Statement, ¶¶ 3–6.

### 3.  Koznitz's Grounds in Opposition

Koznitz argues that plaintiff lacks standing and failed to serve a notice of default required by the Mortgage.  I address each of these arguments in turn.

#### *a.  Standing*

Koznitz first argues that plaintiff lacks standing to maintain this foreclosure action.  *See* MTD Mem. at 4–6.  In this regard, Koznitz pleads as its second affirmative defense that "[p]laintiff cannot establish that the [N]ote and/or [M]ortgage executed by [Alam] was assigned to plaintiff."  Answer at 1, Dkt. 30.[8]  Plaintiff contends it is the owner and holder of the Note and Mortgage, and thus does have standing.  *See* Compl. ¶ 31.  More specifically, plaintiff's Rule 56.1 Statement asserts that "[p]laintiff was in physical possession and was the owner and holder of the [N]ote and [M]ortgage when the Complaint was filed."  Pl's Rule 56.1 Statement ¶ 8.  Koznitz's response states that "[p]laintiff was not the owner and holder of the [N]ote when the [C]omplaint was filed," but apparently does not dispute that plaintiff physically possessed the Note and Mortgage at the time it commenced this case.  Koznitz's Response to Pl's Rule 56.1 Statement ¶ 8.

As discussed in detail below, plaintiff's contention that physical possession of the Note is all that is required to confer standing is an oversimplification of the case law.  Rather, where, as here, the note is endorsed to a specific payee, a plaintiff seeking to foreclose must demonstrate that the note has been properly assigned.  Plaintiff ultimately makes that demonstration because

---

[8]  The first and second affirmative defenses both relate to standing.

it is in possession not only of the Note but also of allonges showing the chain of assignments from the original payee to it.  The only substantial questions raised by Koznitz are whether the allonges are properly affixed to the Note and, if they are not, whether that is sufficient to raise a material question of fact with respect to plaintiff's standing.

"Where, as here, the plaintiff's lack of standing [to foreclose on a mortgage] is raised as a defense, it remains [p]laintiff's burden to show it indeed has standing before the burden shifts to [d]efendant[]."  *1077 Madison St., LLC v. Smith*, 2015 WL 5793427, at *11 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks and citations omitted), *aff'd*, 670 F. App'x 745 (2d Cir. 2016). Under New York law, a plaintiff establishes standing in a mortgage foreclosure action by demonstrating that it is "both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action [was] commenced."  *U.S. Bank, N.A. v. Crutch*, 2012 WL 1605595, at *2 (E.D.N.Y. May 8, 2012) (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 753 (2d Dep't. 2009)).  Significantly, being a holder or assignee of the underlying note is sufficient for standing to foreclose, because "the mortgage passes with the debt as an inseparable incident."  *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Collymore*, 68 A.D.3d at 754).  In other words, an "ineffective written mortgage assignment ha[s] no effect on the plaintiff's status as owner and/or holder of the note and mortgage through its possession of the note."  *Wells Fargo Bank v. Zelaya*, 47 Misc. 3d 1228(A), at *4 (N.Y. Sup. Ct., Suffolk Cty. June 4, 2015) (holding that physical possession of the original note endorsed in blank is sufficient to establish the plaintiff as holder of the note); *see also Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015) (holding that "the note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law").

Plaintiff asserts it is a holder with standing to seek foreclosure because it had physical possession of the Note and affixed allonges when it commenced this lawsuit.  *See* Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Summ. J. Mem.") at 6, Dkt. 39; MTD Opp. at 7–8; Revised Dotoli Aff. ¶ 4 ("[A]t the time the Complaint was filed, [p]laintiff was in physical possession and was the owner and holder of the Note and Mortgage with all endorsements and allonges as affixed thereto.").

New York courts determine the circumstances under which physical possession confers holder status, and thus standing to foreclose, by reference to New York's Uniform Commercial Code ("N.Y. U.C.C.").  *See, e.g., HSBC Bank USA, N.A. v. Roumiantseva*, 130 A.D.3d 983, 985 (2d Dep't. 2015); *Zelaya*, 47 Misc. 3d 1228(A), at *4; *U.S. Bank N.A. v. Bresler*, 39 Misc. 3d 1205(A), at *5 (N.Y. Sup. Ct., Kings Cty. April 3, 2013) (noting that "numerous trial courts throughout the Second Department have ruled that, a note secured by a mortgage is a negotiable instrument, and a transfer requires an indorsement on the instrument itself or on a paper so firmly affixed thereto as to become a part thereof, as per [N.Y. U.C.C.] § 3-202(2), in order to effectuate a valid assignment of the instrument") (collecting cases)).

The N.Y. U.C.C. defines a "holder" as

(A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; or

(B) the person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or

(C) the person in control of a negotiable electronic document of title.

N.Y. U.C.C § 1-201(b)(21).  Under the N.Y. U.C.C., holders "receive their rights through negotiation," while assignees or transferees "must prove that the transactions through which they acquired their interests vested them with ownership or holder rights to demonstrate their

foreclosure standing." *In re Hilton*, 544 B.R. 1, 11 (Bankr. N.D.N.Y. 2016). "Negotiation is merely a special form of transfer, the importance of which lies entirely in the fact that it makes the transferee a holder as defined in Section 1-201." Official Comment to N.Y. U.C.C. § 3-202(1). "The mechanism of negotiation depends upon the form in which the instrument was originally made or drawn, or in which it has been subsequently indorsed." *Bank of N.Y. Mellon v. Deane*, 41 Misc.3d 494, 499 (N.Y. Sup. Ct., Kings Cty. July 11, 2013). A note "payable to order" is negotiated "by delivery with any necessary indorsement" whereas a note payable to bearer "is negotiated by delivery." *Id.* (citing N.Y. U.C.C. § 3-202). An endorsement must be on the note itself, or on an allonge, which is "a paper so firmly affixed thereto as to become a part thereof." N.Y. U.C.C. § 3-202(2) & Official Comment ¶ 3.

The Second Circuit has held that "[p]hysical possession of a note establishes standing 'where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff.'" *1077 Madison St., LLC v. Smith,* 670 F. App'x 745, 746 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Ostiguy*, 127 A.D.3d 1375, 1376 (3d Dep't. 2015)); *see Thompson*, 631 F. App'x at *15; *Caraballo v. Homecomings Fin.*, 2014 WL 2117225, at *4 (S.D.N.Y. May 21, 2014) ("[P]hysical possession of the Note is sufficient to transfer mortgage rights under only limited circumstances: where there is an allonge or indorsement in blank on the face of the Note, the Note may be transformed into bearer paper, and mere physical possession will imbue the holder of the Note with mortgage-related rights."); *see generally Taylor*, 25 N.Y.3d at 361 ("The physical delivery of the note to the plaintiff from its owner prior to commencement of a foreclosure action may, *in certain circumstances*, be sufficient to transfer the mortgage obligation and create standing to foreclose." (emphasis added)).

In *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016), the Second Circuit used language that, on first glance, appears to support plaintiff's contention that physical possession of a note necessarily conveys standing to foreclose: "New York courts have repeatedly held that proof of physical possession—such as the affidavits of [plaintiff's] corporate representative and counsel in this case—is sufficient *on its own* to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *Id.* (emphasis added) (citing *Wells Fargo Bank, N.A. v. Charlaff*, 134 A.D.3d 1099, 1100 (2d Dep't. 2015); *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 982 (2d Dep't. 2015); *HSBC Bank USA, N.A. v. Spitzer*, 131 A.D.3d 1206, 1207 (2d Dep't. 2015); *Deutsche Bank Nat'l Tr. Co. v. Abdan*, 131 A.D.3d 1001, 1002 (2d Dep't. 2015)). The note at issue in *Melina*, however, was endorsed in blank. 827 F.3d at 216. The same was true in a case relied on by plaintiff, *JPMorgan Chase Bank, N.A. v. Weinberger*, 142 A.D.3d 643, 645 (2d Dep't. 2016), where the court stated, "[t]here is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it."

In contrast, it is undisputed that the Note here was specifically endorsed in favor of AmTrust Bank.  Thus, mere possession of the Note without proof of endorsements ultimately payable to plaintiff would be insufficient to establish standing.  It is also undisputed, however, that when plaintiff filed suit, it had physical possession not only of the original Note, but also of a series of endorsements.  These endorsements, all but the first of which are on documents labeled allonges, are made by the FDIC as receiver for AmTrust Bank, the original lender identified in the Note, to Bayview Loan Servicing, LLC ("Bayview"); by Bayview to RCS Recovery Services, LLC ("RCS"); by RCS to Blue Lagoon; and finally by Blue Lagoon to plaintiff.  *See* Note & Allonges at ECF pages 5–8; Response to Pl.'s Rule 56.1 Statement ¶ 8.

20

As noted above, the N.Y. U.C.C. provides that an allonge must be "so firmly affixed" to a note as to be a part of it.  N.Y. U.C.C. § 3-202(2).  Koznitz attempts to raise a question of material fact by asserting that the allonges from Bayview to RCS and from RCS to Blue Lagoon were not "firmly affixed" to the Note, as required by N.Y. U.C.C. § 3-202(2), and thus were not valid assignments.  *See* MTD Mem. at 4–6.  Counsel for Koznitz examined the Note and attached allonges at the offices of plaintiff's counsel on August 2, 2018.  *See* Declaration in Supp. of Def.'s Cross-Mot. to Dismiss & for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. ("Decl. in Supp. of Def.'s Cross-Mot") ¶¶ 3–4, Dkt. 47.  At that time, the Note and allonges were fastened with one staple on the upper left side, and there were no visible staple holes or tears on the documents.  *See id.* ¶¶ 6–7.  Based upon these facts, Koznitz asserts that there was "no indication that [prior] staples had been removed" from the Note and allonges, thereby indicating that the "documents were fastened after the final allonge, from Blue Lagoon . . . to plaintiff, was executed," and that the allonges from Bayview to RCS and from RCS to Blue Lagoon must therefore not have been properly affixed to the Note.  MTD Mem. at 5.

While the inference Koznitz seeks to draw from counsel's examination of the Note and allonges is not implausible, it is insufficient to raise a material question of fact with respect to plaintiff's standing.  First, although N.Y. U.C.C. § 3-202(2) requires firm affixation, it does not specify any particular mechanism by which an allonge must be affixed to a Note.  Plaintiff has submitted an affidavit from Dotoli attesting that plaintiff, at the time the suit was filed, had "possession of the original Note, with endorsements and allonges, as affixed thereto."  Aff. of Note Possession ¶ 7, Dkt. 1-4.

Second, the facts of this case indicate that the purpose of requiring firm affixation has been met.  New York's Uniform Commercial Code "must be liberally construed and applied to

promote its underlying purposes and policies," including "to simplify, clarify, and modernize the law governing commercial transactions."  N.Y. U.C.C. § 1-103(a)(1).  Clearly, the purpose and policy underlying the requirement of firm affixation in Section 3-302(2) is to provide confidence that an endorsement actually relates to the negotiable instrument at issue.  Here, there can be no question that the allonges relate to the Note.  The endorsements from Bayview to RCS, from RCS to Blue Lagoon, and from Blue Lagoon to plaintiff each refer to the borrower on the Note by name and to the original principal amount of the Note.  Thus, in the language of N.Y. U.C.C. § 3-202, these allonges so clearly relate to the Note "as to become a part thereof."  Koznitz, moreover, has had ample opportunity to take discovery in this action.  *See, e.g.,* Dkt. 32.  Koznitz has failed, however, to present any evidence calling the authenticity of any of the allonges into question or suggesting that any of the assignments did not in fact occur.

Because of these additional indicia that the allonges relate to the Note, this case is similar to one where this Court held that the mortgagee, H & R Block, had standing to foreclose even though the relevant allonge was not physically affixed to the underlying note at time of assignment.  *See Robinson v. H & R Block Bank, FSB*, 2013 WL 2356106, at *2 (E.D.N.Y. May 29, 2013), *aff'd*, 562 F. App'x 12 (2d Cir. 2014).  In *Robinson*, the mortgagee submitted the affidavits of (1) the prior holder of the Note confirming that the note and allonge were delivered to H & R Block, and (2) the president of H & R Block confirming receipt of the note and allonge.  *See id.* at *4.  Plaintiffs, like Koznitz here, offered no evidence to contradict the statements in these affidavits, and their challenge to H & R Block's standing was accordingly rejected.  *See id.*  This decision was affirmed by the Second Circuit, and neither the parties nor independent research by this Court reveals any cases that question or overturn the Second Circuit's affirmance.  To the contrary, at least one New York appellate court has similarly

22

reasoned that, under the circumstances presented in that case, physical possession of the note secured by a mortgage at the commencement of a foreclosure action was sufficient to establish standing despite questions regarding the validity of the relevant allonges. *See U.S. Bank N.A. v. Askew*, 138 A.D.3d 402, 402 (1st Dep't. 2016).

Koznitz relies heavily on *Roumiantseva*, where an endorsement attached by a paperclip was held insufficient to satisfy the requirement of firm affixation. *See* 130 A.D.3d at 985. *Roumiantseva*, though, is distinguishable. First, it appeared in that case that the entity purportedly assigning the note and mortgage was in fact never the holder of the note. *See id.* at 984. Second, it is unclear from the court's recitation of facts in that case whether plaintiff was in physical possession of the original note at the time the lawsuit was filed.

For all these reasons, I conclude that plaintiff has standing to bring this foreclosure action.

### b.    *Notice of Default*

Koznitz's fifth affirmative defense alleges that plaintiff failed to "establish that it mailed a notice of default, as required by the terms of the [M]ortgage." Answer at 2; *see* MTD Mem. at 7. Plaintiff, in response, primarily alleges that Koznitz lacks standing to challenge plaintiff's compliance with a contract to which Koznitz was not a party. *See* Summ. J. Mem. at 8–9; MTD Opp. at 9.

Plaintiff is correct; Koznitz, not being a party to the Mortgage, lacks standing to assert noncompliance with its terms. *See Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014) (holding that the plaintiffs who were neither parties nor third-party beneficiaries of a pooling service agreement could not assert noncompliance with the agreement as a claim or defense); *Nash v. Duroseau*, 39 A.D.3d 719, 720 (2d Dep't. 2007) ("As third parties who were

not parties to the mortgages which are the subject of this mortgage foreclosure action, [the defendants] lack standing to raise the defense of lack of consideration on the ground that that defense is personal to the original mortgagor."); *accord Cty. of Tioga on Behalf of Tioga Cty. Solid Waste Dist. v. Solid Waste Indus. Inc.*, 178 A.D.2d 873, 874 (3d Dep't. 1991).

Koznitz asserts that it has standing to assert noncompliance with the Mortgage because it "stands in the shoes" of Alam.  Mem. of Law in Supp. of Def.'s Mot. to Dismiss & for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. ("MTD Reply") at 4 (internal quotation marks and citations omitted), Dkt. 56.  This argument is not persuasive.  "Under New York law, contracts are freely assignable absent language which expressly prohibits assignment." *In re Stralem*, 303 A.D.2d 120, 122 (2d Dep't. 2003).  "When a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had." *Id.* at 123 (internal citation omitted).  However, "[w]hen a person purchases property subject to a lien[,] he or she does not become personally liable to pay the debt underlying the lien.  The property is, however, burdened by the lien and its equity value to an owner is reduced by the value of the lien." *Ozzi v. I.R.S.*, 1992 WL 37080, at *2 (E.D.N.Y. Feb. 11, 1992).

Here, although Koznitz is the record owner of the Property and his interest in the Property is subject to the Mortgage, there is no indication that he is responsible for the debt the Mortgage secures.  Indeed, plaintiff acknowledges that Koznitz is not liable for Alam's debt; the Complaint alleges that Alam alone is "indebted to . . . [p]laintiff pursuant to the terms of the Note and Mortgage."  Compl. ¶ 43.  As Koznitz is not a party to the Mortgage, it cannot assert noncompliance with the Mortgage as a defense.  Thus, I respectfully recommend that plaintiff's motion for summary judgment be granted with respect to Koznitz's fifth affirmative defense.

c.    *The Remaining Affirmative Defenses*

In addition to the affirmative defenses specifically discussed above, five others are alleged in Koznitz's answer but are not addressed in its cross-motion and opposition papers—despite the fact that plaintiff set forth individualized arguments favoring dismissal of each. Accordingly, these remaining affirmative defenses are deemed abandoned.  *See e.g. W. Coast 2014-7, LLC v. Tolson*, 2017 WL 3405517, at *11 (E.D.N.Y. Aug. 7, 2017).

Therefore, for the foregoing reasons, I respectfully recommend that plaintiff's motion for summary judgment be granted in its entirety.

### III.   KOZNITZ'S CROSS-MOTION TO DISMISS & FOR SUMMARY JUDGMENT

Koznitz relies on the same arguments to support its sanctions motion and its cross-motion to dismiss and for summary judgment as it makes in opposition to plaintiff's motion.  Thus, for the same reasons outlined above, I respectfully recommend that Koznitz's cross-motion be denied.

### IV.   PLAINTIFF'S MOTION TO APPOINT A RECEIVER

Finally, plaintiff requests that this Court appoint a receiver to collect rents generated by the Property during the pendency of this litigation, as required by the Mortgage.  *See* Mem. of Law in Supp. of Pl.'s Mot. to Appoint a Receiver to Collect Rents ("Receiver Mem."), Dkt. 59. However, because the "appointment of a receiver is considered to be an extraordinary remedy, [which] should be employed cautiously and granted only when clearly necessary to protect [a] plaintiff's interests in the property," *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (internal quotation marks and citations omitted), and "because [if this Report and Recommendation is adopted] foreclosure of the mortgage (after the setting of law days) will shortly entitle [plaintiff] to possession of the Property," *Bank of Am., N.A. v. Stephanie Props., LLC*, 2015 WL 1445237,

at *4 (D. Conn. Mar. 30, 2015), I respectfully recommend that the motion to appoint a receiver to collect rents be denied.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion for summary judgment be granted in its entirety; Koznitz's cross-motion to dismiss and for summary judgment, second motion to dismiss, and motion for sanctions be denied; and plaintiff's motion to appoint a receiver be denied.  Moreover, I respectfully recommend that the Department of Taxation and the IRS be dismissed from this action, and that Koznitz be permitted to take additional discovery on the issue of subject matter jurisdiction, provided it is not duplicative of discovery it has already conducted.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before **November 13, 2019**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

/s/
_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
October 30, 2019

U:\#JAV 2019-2020\Courchevel v. Alam, 17-CV-00785 (JBW)\Final R&R.docx